***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The following were marked and received into evidence as:
 EXHIBITS
Plaintiff's Exhibit No. 1 — I.C. forms, medical records and list of medical expenses.
State's Exhibit No. 1 — Articles of Incorporation.
State's Exhibit No. 2 — 2001 Annual Report.
State's Exhibit No. 3 — 2002 Annual Report.
State's Exhibit No. 4 — 2003 Annual Report.
State's Exhibit No. 5 — 2004 Annual Report.
State's Exhibit No. 6 — Employment Security Commission Records.
State's Exhibit No. 7 — North Carolina Industrial Commission coverage screen.
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began working for Defendant-Employer IFE, Inc., in September 1999. Plaintiff continued to work for Defendant-Employer through her March 10, 2005 date of injury. Plaintiff's duties included billing accounts, sales, helping customers, helping with engraving, and packing and shipping.
2. Defendant-Employer IFE, Inc., was a North Carolina corporation in which Donald A. Merrell was the president. The company's 2001 annual report indicates that the nature of the business was trophies, awards, signage, and promotional products. The Employment Security Commission records for the same federal tax identification number and physical location as *Page 3 
Defendant-Employer show that Defendant-Employer had three or more employees from January 1, 2001 through at least December 31, 2005.
3. An employment relationship existed between Plaintiff and Defendant-Employer on March 10, 2005. Defendant-Employer had three or more employees and is subject to the North Carolina Workers' Compensation Act (Act). All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the Act.
4. On March 10, 2005, the date of Plaintiff's injury, Defendant-Employer did not have workers' compensation insurance as required by the Act.
5. Plaintiff suffered a compensable injury by accident on March 10, 2005, arising out of and in the course of her employment with Defendant-Employer when she fell from a six-foot stepladder while trying to place an old file into storage. Plaintiff suffered injuries to both upper extremities when she fell onto her outstretched hands and also to her teeth due to her face hitting the floor.
6. Plaintiff's average weekly wage was $471.91, yielding a compensation rate of $314.62. Defendant-Employer did not provide any wage information or a Form 22 wage chart as required by the Act. Defendant-Employer filed no forms in this case either admitting or denying Plaintiff's claim.
7. Plaintiff was transported by ambulance from Defendant-Employer's location in Waynesville, North Carolina to Haywood Regional Medical Center. After examination and stabilization, Plaintiff was transferred by ambulance to Mission Hospital in Asheville, North Carolina.
8. Upon arrival at Mission Hospital, Plaintiff was admitted in the Emergency Room and diagnosed with comminuted complex fracture/dislocations of right and left elbows involving *Page 4 
comminuted fractures of the proximal ulnae, ligamentous disruption, and bilateral fractures of the radial head. She also was diagnosed with a dorsal impaction/avulsion fracture from the dorsal aspect of the triquetrum at the left wrist, without evidence of instability and also had minor facial trauma with mucosal laceration of the lower lip, and a contusion to her right knee. On March 11, 2005, Dr. Stephen Westly performed open reduction internal fixation (hereinafter ORIF) of complex fracture/dislocations of left and right elbows, with ORIF of proximal ulna fractures, left radial head fracture, multiple ligamentous repairs, and resection of unreconstructable right radial head. She was discharged on March 13, 2005.
9. On March 16, 2005, Plaintiff was re-admitted to Haywood Regional Medical Center for reaction to her pain medication.
10. Following stabilization and discharge from Haywood Regional, Plaintiff continued to progress well. At approximately one month after surgery, Plaintiff went to physical therapy and made satisfactory progress.
11. By August 11, 2005, a CT scan showed non-union and surgical debridement of the fracture non-union site with revision internal fixation and iliac crest bone graft was discussed. On August 26, 2005, Dr. Westly performed removal of a broken plate/screw fixation right ulna and ORIF of ulna nonunion with corticocancellous bone graft from the right iliac crest and supplemental application of platelet-rich blood concentrate. Again, Plaintiff continued along her recovery course with physical therapy and continued improvement.
12. In April 2006, Plaintiff was continuing to recover well, but did have considerable prominence of the plate and screw fixation hardware. On June 2, 2006, Dr. Westly performed removal of the plate/screw fixation left ulna/olecranon. *Page 5 
13. In addition to her treatment with Dr. Westly, Plaintiff also consulted with Dr. Richard Jones of Southeastern Sports Medicine for right shoulder pain subsequent to her work injury. At her August 16, 2005 evaluation, Dr. Jones opined that Plaintiff was suffering from adhesive capsulitis and impingement syndrome of the right shoulder. Physical therapy and cortisone injections improved her symptoms, and at her final visit on December 5, 2005, Dr. Jones opined that she was much improved, that she should continue with home exercise and return on an as-needed basis.
14. From December 2005 through April 2006, Plaintiff received treatment from Dr. Scheiderich, D.D.S. and Dr. Shawn Kennedy, D.D.S., to restructure and repair teeth that were damaged.
15. As of the date of hearing before the Deputy Commissioner, Plaintiff continued to recover from her latest surgery and faced the possibility of further surgery on the right arm. As a result of her injury, Plaintiff has been totally disabled from working since the date of injury. No doctor had released her to return to work. Plaintiff is entitled to temporary total disability compensation from March 11, 2005 through the date of hearing before the Deputy Commissioner and continuing until further order of the Industrial Commission.
16. Defendant-Employer paid Plaintiff for seven weeks at $380.28 per week and six weeks at $200.00 per week. Defendant-Employer also paid Plaintiff $200.00, to use toward medical expenses. These payments yield a total of $4,061.96, for which Defendant-Employer is entitled to a credit.
17. As of the date of the hearing before the Deputy Commissioner, Plaintiff had incurred medical expenses totaling $134,227.39, from the following providers: Ambulance Services — $1,311.00; Haywood Regional Medical Center — $8,509.93; Haywood Medical Imaging — $561.00; *Page 6 
Haywood ER Physicians — $755.00; Dr. William Miller — $205.00; Mission Hospitals — $69,158.42; Mission ER Physicians — $454.00; Asheville Radiology Associates — $2,401.00; Asheville Anesthesiology Associates — $7,827.00; Dr. Stephen K. Westly — $27,621.00; Combined Therapy Specialties — $4,362.00; Dr. Richard Jones/SE Sports Medicine — $540.00; Dr. Michael S. Wasson, DMD, PA — $4,031.00; Dr. Shawn Kennedy, DDS — $1,625.00; Sisters of Mercy Urgent Care — $1,016.00; Park Ridge Urgent Care — $816.48; Midway Medical Center — $2,229.16; and prescriptions — $804.40.
18. Plaintiff also incurred travel expenses going to medical appointments for which Plaintiff is entitled to recover from Defendant.
19. Defendant-Employer failed to purchase workers' compensation insurance as required by N.C. Gen. Stat. § 97-93, to cover his employees for the time period beginning January 1, 2001 through at least December 31, 3005, which amounts to 1,825 days.
20. Donald A. Merrell, as owner and president of Defendant-Employer, had the ability and authority to bring his business into compliance with N.C. Gen. Stat. § 97-93, and failed to do so.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Defendant-Employer had three or more employees and is subject to the North Carolina Workers' Compensation Act. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2. *Page 7 
2. On March 10, 2005, Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with Defendant-Employer. N.C. Gen. Stat. § 97-2.
3. Plaintiff had an average weekly wage of $471.91, yielding a compensation rate of $314.62. N.C. Gen. Stat. § 97-2.
4. Plaintiff is entitled to have Defendant pay for all medical expenses reasonably related to her compensable injury that were incurred to lessen the period of disability, effect a cure, or give relief, including her out-of-pocket medical expenses and the lien held by Blue Cross Blue Shield of North Carolina for medical care paid on Plaintiff's behalf. As of the date of the hearing before the Deputy Commissioner, Defendant was obligated to pay $134,227.39, for medical expenses Plaintiff incurred due to her injuries. N.C. Gen. Stat. §§ 97-25,97-25.1.
5. Plaintiff is entitled to have Defendant pay her temporary total disability compensation from March 11, 2005 through the date of the hearing before the Deputy Commissioner, and continuing until further Order of the Commission, subject to a credit to Defendant for the benefits already paid to Plaintiff. N.C. Gen. Stat. § 97-29.
6. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of $1.00 for each employee, but not less than $50.00 nor more than $100.00 for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
7. Anyone with the ability and authority to bring their business into compliance with N.C. Gen. Stat. § 97-93, who fails to do so, may be assessed a penalty equal to 100% of the amount of compensation due Defendant's employees injured during the time his business failed to comply with N.C. Gen. Stat. § 97-93, as set out in N.C. Gen. Stat. § 97-94(d).
8. Defendant-Employer failed to purchase workers' compensation insurance as *Page 8 
required by N.C. Gen. Stat. § 97-93, to cover its employees for the time period beginning January 1, 2001 and through at least December 31, 2005, which amounts to 1,825 days. N.C. Gen. Stat. § 97-93. Defendant-Employer shall be assessed the penalty set forth in N.C. Gen. Stat. § 97-94(b).
9. Defendant Donald A. Merrell, as owner and president of Defendant-Employer, had the ability and authority to bring his business into compliance with N.C. Gen. Stat. § 97-93. Defendant Donald A. Merrell individually and should be assessed a penalty equal to 100% of the amount of compensation due Plaintiff for her injury which occurred during the time his business failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay Plaintiff temporary total disability compensation at the rate of $314.62 per week from March 11, 2005 and continuing until further Order of the Commission, subject to a credit to Defendant-Employer for the benefits already paid to Plaintiff. From March 11, 2005 through the July 18, 2006 date of hearing before the Deputy Commissioner, 70 weeks and five days of benefits have accrued, which amounts to $22,248.13. Defendant shall pay Plaintiff the $22,248.13, in benefits that have accrued in a lump sum, less the credit for the $4,061.96, already paid to Plaintiff and subject to an attorney's fee set out below. Thereafter, Defendant shall continue to pay weekly benefits at the rate of $314.62 per week, subject to an attorney's fee set out below.
2. Defendant shall pay for all medical expenses reasonably related to Plaintiff's compensable injury that were incurred or will be incurred to lessen the period of disability, effect a *Page 9 
cure, or give relief, including Plaintiff's out-of-pocket medical expenses and the lien held by Blue Cross Blue Shield of North Carolina for medical care paid on behalf of Plaintiff. Plaintiff's accrued medical expenses as of the date of the hearing before the Deputy Commissioner were $134,227.39.
3. An attorney's fee of 25% of the $18,186.17 lump sum indemnity compensation that has accrued up to the date of hearing before the Deputy Commissioner, and which is due and owing to Plaintiff shall be deducted and paid directly to Plaintiff's counsel. Thereafter, Defendants shall deduct and pay every fourth compensation check owed to Plaintiff directly to Plaintiff's counsel.
4. Plaintiff's counsel shall send a copy of this decision to all of the healthcare providers in this matter who have not been paid for services provided to Plaintiff related to his compensable injury. The healthcare providers with outstanding bills in this matter shall not seek to obtain collection of these bills from Brenda D. Boisvert. The healthcare providers shall direct their collection efforts at Defendant-Employer IFE, Inc. c/o Donald A. Merrell whose address appears to be 144 Industrial Park, Waynesville, North Carolina 28786, based upon information in the Industrial Commission file. Failure to comply with this Order by the healthcare providers and their collection agencies will result in the initiation of contempt proceedings against persons in violation of this Order.
5. Pursuant to N.C. Gen. Stat. § 97-94(b), a civil penalty in the amount of $50.00 per day is hereby assessed against Defendant-Employer IFE, Inc. for failure to maintain workers' compensation coverage on his employees from January 1, 2001 through December 31, 2005, which amounts to 1,825 days. Defendant shall make a check payable to the North Carolina Industrial Commission in the amount of $91,250.00, and send it to Assistant Attorney General *Page 10 
Tracy Curtner at the office of the North Carolina Industrial Commission Fraud Unit, 4340 Mail Service Center, Raleigh, North Carolina 27699-4340.
6. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty in the amount of 100% of the compensation due to Plaintiff in this matter is assessed against Defendant Donald A. Merrell individually for failing to comply with N.C. Gen. Stat. § 97-93. Defendant Donald A. Merrell shall send a check in the amount of $152,413.56 (temporary total disability to date of hearing before the Deputy Commissioner in the amount of $18,186.17 + medial bills in the amount of $134,227.39) made payable to the North Carolina Industrial Commission. This check shall be sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission. Defendant Donald A. Merrell in his individual capacity shall also pay a penalty in the amount of 100% of the compensation due Plaintiff since the date of the hearing before the Deputy Commissioner when a sum certain is computed and presented to Donald A. Merrell individually.
7. Should the parties resolve this claim, the parties shall notify the undersigned members of the Full Commission, and Defendant Donald A. Merrell shall contact Assistant Attorney General Tracy Curtner at the office of the Industrial Commission Fraud Unit.
8. Defendants shall pay the hearing costs.
This the ___ day of June 2007.
S/____________________ BERNADINE S. BALLANCE COMMISSIONER
 CONCURRING: *Page 11 
 S/____________________ LAURA K. MAVRETIC COMMISSIONER
 S/____________________ DANNY LEE MCDONALD COMMISSIONER